United States v. Hardy at 24-8006. Thank you, Your Honor, and may it please the court. Robert Fishman on behalf of Mr. Hardy. I want to begin by addressing the government's supplemental authority that was filed a couple weeks ago. United States v. SAP. That's a case that goes to the third issue in our brief, the quantity of drugs attributable to Mr. Hardy for purposes of sentencing. SAP is an unpublished decision. It doesn't really, it doesn't create any new law. It doesn't plow any new ground, but it is relevant and enlightening, nonetheless, for this case for two reasons. Number one, it acknowledges the holding of US v. Ruby and the fact that under this court's precedent, the key to assessing the reliability of hearsay statements for purposes of sentencing is whether they are independently corroborated. Ruby says that. We discussed that requirement in our brief based on Ruby. SAP reaffirms that, and SAP applies it to the facts in that case and concludes that there was no plain error in relying on the hearsay statements in that case for two reasons. The first is there was evidence that the declarant had made a prior consistent statement, and secondly, the hearsay statement at issue was recorded by a police, you know, what this court said, as a consequence of that, the sentencing judge could assess the demeanor of the hearsay declarant and kind of judge her credibility. So those two things were independent corroboration for the reliability of her challenged hearsay statement. In Ruby, kind of similar, there was three corroborating witnesses who gave the same account as the hearsay witness. The defendant had pled guilty to charges that were very similar to the allegations made by the hearsay declarant. US v. Lieb, which is a case that's cited in SAP, there the hearsay statement was corroborated by a criminal complaint, an arrest warrant affidavit, again a body cam recording, and there was no evidence that the hearsay declarant had any bias towards the defendant. All of those cases contrast with the facts of this case in that I think that even arguably there is only one independent fact that corroborates the confidential informants hearsay statement, and that is the representation of the interviewing police officer that she had given them reliable information in the past. This is officer Sane, I don't know how you say it, but yes, we'll call him Sane. But even that bit of corroborating evidence is problematic because as we know, we don't know anything about her past cooperation, we don't know anything about the nature of it, what kind of crimes it involved. We don't know why she was able to show the officers, quote, several Facebook communications with Mr. Hardy when she claims to have dealt with him on almost a daily basis for a year. And that's why we rely on the Seventh Circuit case in Heldman, which obviously is not controlling here, but it was a similar problem. You had an officer say, we've dealt with this informant before and the person is reliable, but Heldman said, well there's no affidavit, there's no testimony, there's nothing that fleshes that out and gives us any meaningful understanding of whether this person is indeed reliable. I frankly think that the government understood that it should have done what was found to be lacking in Heldman. And the reason I say that is because the prosecutor at sentencing turns to the confidential informant statements and tells the court, you know, Officer Sane, he was going to come up here with me to Casper and, you know, testify about the confidential informant, but he's busy. He's got a family matter and he's not here. So the prosecutor says, you know, so all I can do is point to the Facebook messages. Which gets me to sort of the second part of this argument. Not only do you have, I think, almost a complete lack of corroborating evidence on which to formulate a reliability determination, you have, by the government's own account, I think, lots of evidence to indicate that this witness is not reliable at all. The first and most obvious is the fact that she claims to have purchased fentanyl from Mr. Hardy every two or three days for a year, despite the fact that he was incarcerated for 25% of the time. Yeah, which is significant when you're talking about a hundred fentanyl pills being purchased every two or three days. Yeah, let me ask you about that. So, and you're basing that on the pre-sentence report that says that he was arrested, let's say, in September and then he was released on bond in January. Correct. Now, that's pretty sketchy information. We don't know, and we're here on clear air on this issue, and so how do we know that he, when he was arrested, that he was detained for the entirety of that period from September to January 9th? Because I think if you look at, there's many entries for his arrest, subsequent release, re-arrest, for that Laramie County crime that you're talking about, paragraph 30 of the PSR, and if you read it, it shows when he's being released. It shows when he's being released, and there is no entry between September 8th, 21. Okay, and I didn't mean to talk about it. No, no. So, I want to probe a little bit further on this point. So, on page 29 of the pre-sentence report, it refers to the prosecutor's statement that the confidential informant had attributed 9,000 pills, 900 grams of fentanyl to the defendant. For some reason, the probation office says on the very next page that he or she is going to And that was what was used by the judge, right? Now, if the prosecutor's statement, 900 grams, is credited, so that would reduce the quantity of the fentanyl to the defendant by 300 grams, correct? If we credit your argument, he's still 500 grams over the threshold for a base offense level of 32, so why would it make any difference if we take off the 300 grams and say, well, the confidential informant had to be wrong about those 3,000 pills because he was incarcerated from November to January. Sure, that's correct. Your observation is correct, but it's not our argument. My argument is not deduct 300 grams because of the period of incarceration. The argument is the informant is a liar. She is not reliable. You shouldn't believe any of her testimony, so the 1,700 grams goes by the wayside. I'm not quarreling about the 300. All you have to argue isn't that she's a liar, but that she's, that the government hasn't shown reliability. Yeah, fair enough. She's not reliable, and there's every reason to question the reliability of her account, and it's not just the fact of his incarceration. I agree with Your Honor that it's not absolutely clear what's going on here. There was no testimony or evidence presented about his incarceration, but it goes beyond just that. The government produced four Facebook messages between the confidential informant and my client dealing with fentanyl buys. Now, we talk about, I mean, there are thousands of pages of Facebook messages in this case, dozens and dozens of exchanges for purchases of 10 fentanyl pills with some of these people. You would think that there would just be an enormous amount of messaging between these two people to arrange sizable buys every two or three days for a year, as she claimed. So I think it's pretty clear there is no, just, not just that there is no independent corroborating evidence. There's a lot of evidence, the government's own evidence, that provides every reason to question the reliability of her statement. The way I read the government's response is not claiming that I'm wrong, that there actually is independent corroborating evidence. Their argument essentially is, well, her statements are kind of consistent with the allegations of other people. It's consistent with the witnesses who testified at trial. So it's reliable enough. And the problem with that is twofold. Number one, just as an analytic matter, the question is not whether the allegations contained in a hearsay declaration are similar to allegations that other people make. That's not how you judge that. And it's especially not how you judge it when you're talking about something like drug quantity, okay? If it were, you could maybe make the case if it were something, say, propensity towards violence. And a lot of people say the person is violent and the hearsay declarant says the same thing. Maybe. When you're talking about allegations of individual particularized purchases, the same cannot be said. It also fails as a factual matter because there is no other witness in this case, whether a witness who testified at trial or just witnesses that kind of appear through their Facebook messages, who claim to have purchased and dealt with Mr. Hardy at a anything like what the confidential informant is alleging. So she's just in a league entirely of her own and it seems to me pretty clear that the allegations of other witnesses cannot render her claims, her kind of extravagant claims, reliable. And I think if there are no further questions I will reserve the remainder of my time. Thank you. Good morning and may it please the court. My name is Paige Hammer and I represent the government today. We are here on three issues that the government is asking this court to affirm. First, that the defendant's presence was not required at the hearing where the court read its order from the James hearing. Can you just concentrate on the third issue? Of course, your honor. That's your problem issue. I would argue we do not have a problem. The district court did not err in finding the confidential sources statement reliable in calculating the relevant conduct drug weight. As the court has noted, the standard of review is clear error, meaning that to reverse this court must be convinced that the district court's findings were simply not plausible or permissible in light of the entire record on appeal. And here the district court appropriately found that those hearsay statements of the confidential source were reliable. In order to be, for hearsay, to be admissible at sentencing there has to be a minimal addition of reliability, which this, as this court said in Cook, is a low hurdle to meet. And one way in which we find hearsay evidence reliable is through corroborating evidence, which was shown here. Specifically, we have the confidential sources statement stating that she purchased a hundred fentanyl pills from the defendant every three days for a year. First, I would point the court to Exhibit 24B, which were the text messages, specifically only Mr. Hardy's messages, that were submitted during trial. Those messages are important because it shows that both the, Mr. Hardy knew the confidential source, so that's the basic foundation, but as well one of those messages shows that the confidential source wanted to buy 100 pills. There's a message from the defendant where he says, quote, couldn't give you 100 illies for $140, insinuating that the confidential source wanted to purchase a hundred fentanyl pills from him for $140, but he was not going to do that for that price. As well, as noted by my colleague, the PSR does note that law enforcement found her statements accurate and reliable, and certainly that is just one factor for this court to consider. It's not what the government hangs its hat on. But is it a problem that you didn't even, or at least your companion in district court, didn't even attribute as much fentanyl to the defendant, based on the confidential informant that the district court did? The prosecutor's statement attributed 9,000 pills, 900 grams, to the confidential informant and for some unknown reason, the probation office adopted by the district court rejected your quantification and said, okay, well, it's actually more than 3,100 additional pills. It's an additional 3,100 grams. So how . . . we're talking about quantity and not just the fact that the defendant was selling a hundred pills every two or three days, but for how long? And it seems that it was clear error, was it not, if the judge was attributing greater weight than you would have based on the confidential informant's statements. I do not think it's clear error, Your Honor. I think the prosecutor's statement filed perhaps reflects the months that perhaps Mr. Hardy was in custody, noting the 900 pills versus the 1,200. But ultimately, I think the court also noted when discussing this issue with my colleague that it doesn't change the ultimate guideline calculation here. Even if you subtract the 300 grams, we're still within the realm of 1.2 kilograms. Well, what about his argument that, well, she or he said that it was for a year, the defendant clearly couldn't have been selling fentanyl to the confidential informant for a year because for three of those months, the defendant was in custody. Isn't that a big problem? I don't think it's a big problem. It's certainly a concern and certainly the district court did not make a record on that issue. But I think that when we are looking at what is the bar here, it's is it not plausible? Is it not permissible? And that ultimately, it is plausible that she could have still been purchasing the 900 pills or 900 grams. And that that could still be a credible, reliable statement upon which the district court relied in finding that he was a base offense 32 or 30. 32. By the way, do you agree that the record supports that Mr. Hardy was in custody from September 2021 to January 2022? I do not have any, yes, your honor, I do not have any information that would dispute what is alleged in the PSR related to when he went into custody and when he was released. I mean part of the argument I heard from Mr. Fishman this morning is that apart from 1200, 900, whatever the numbers may show, simply the fact that there's a statement about purchasing 100 pills every three days for a year doesn't really square with the fact that Mr. Hardy was in custody. That that goes to the reliability determination. How would you respond to that? They're the numbers, it's not a numbers argument, it's a real, it's more of a reliability argument that I take would permeate reliance on her, on the confidential source in general. It's unclear from the record at what point the confidential source began purchasing fentanyl from Mr. Hardy and certainly her statement that she believed it was a year, I agree that that can be used by this court in determining whether or not her statement is reliable and credible. However, I think there's other evidence that within the record that shows Mr. Hardy had the ability and capability of, I apologize your honor, I went into the room you asked me not to in terms of amount. Ultimately I think it is something for this court to consider but that there is other evidence supporting her reliability given the messages sent between Mr. Hardy and her and that law enforcement found her reliable. What was, during that year, was it the first three months that he was incarcerated or was it a period in the middle? It would have been, I apologize your honor, I believe it would have been at the, it was September through January of the preceding year. I apologize. It was of the preceding year. Of the preceding year, yes. So it would have been right before, it would have been six months before the charge conspiracy. So September to January of 2000, September 21 through January 22 and then the charge conspiracy began June of 2022 and ended at the end of that year. My colleagues notes that Helding is actually as support for his argument but I think when we actually look at Helding the legal framework used by the Seventh Circuit is no different than this court here. Here, there has to be, the Seventh Circuit also knows there has to be some addition of reliability or corroboration for the hearsay evidence to be reliable and again there has to be a low standard. There just has to be something for the court to hang its hat on and in Helding, probation used the statements from five confidential informants stating that Helding had sold them methamphetamine and Helding though had been charged with a marijuana felony offense and the district court increased the relevant conduct drug weight based off of those confidential informant statements and on appeal the Seventh Circuit reversed saying there was no evidence within this case that Mr. Helding had ever distributed methamphetamine. The only evidence in the record was that he had possessed a very small user amount. Therefore, there was nothing for that court to hang its hat on to say yes we believe these people that all five of them had purchased methamphetamine from Mr. Helding whereas here there is something for this court to hang its hat on. We have her statement, we have the corroborative text message showing 100 fentanyl pills and as well we have the defendant's own incriminating statement that he was able to sell 1,500 pills in a period that is not insignificant, that he was assisting Derek Ashren, a co-conspirator, in setting up a 500 pill deal and a thousand pill deal and so certainly we take our confidential sources as we get them. They may not always be saints as my colleague from Oklahoma said but ultimately there is something there to show that she is she is credible to us to the amount necessary for this court to affirm. Unless there are any further questions about the third issue I would just briefly turn to our 404b issue issue 2. It's the government's position that the district court did not err in admitting the 404b evidence of the defendant's possession of nine fentanyl pills four months after the end of the charge conspiracy. The standard of review is plain error given that the defendant did not object pre-trial or during trial to the admission of this evidence and in order for the defendant to prevail on appeal he must show that the error was clear and obvious and that he was substantially prejudiced, neither of which he can. The district court order was more than sufficient. Not only did the district court state the proper purposes under which it was admitting this evidence, I would disagree I guess perhaps with my colleagues assertion that the district court just copy pasted the language from the 404b language itself or just reiterated it. I think the district court took a very thoughtful approach in admitting this evidence. He in fact even excluded one of the government's proffered purposes noting that at that point the record did not support an absence or lack of mistake as a proper purpose for the admission of this evidence. It's a nine page order. The district court cited relevant 10th Circuit case law, specifically Maris, Becker, and Conway noting that drug possession close in time to the charge conduct is highly probative. It's highly probative of the defendants knowledge and intent within the conspiracy and especially so when it's the same drug possessed outside the charge conduct as what's charged within the charging document. And I think the district court also appropriately noted that with those with those cases support the notion that possession of nine pills for personal use after the conspiracy is, why should that be 404b evidence in a distribution case? I would point the court to Kelly, a 2006 unpublished case from this circuit where that's what this court held is that small just you personal use possession is relevant when we're talking about plan, motive, intents. You know someone can be a personal user but distribute to feed their own habit. That's relevant. If you're not familiar with these cases, United States against Wilson, United States against Edwards, are you familiar with those cases? I apologize your honor, I am not. Even if the district court could have done more, this court in Galloway which is 937 Federal 2nd 542, a 1991 case is held that a district court's 404b ruling can still be affirmed despite a failure to make specific findings. So long as the factors supporting the 404b analysis are apparent from the record and there's no unsubstantial uncertainty about the end result, this court can't affirm. And so even if this court feels like there could have been more record as alleged by my colleague, that's not the government's position. Our position is that there was plenty of record that this district court made in its order to support the admission of those nine pills. As part of the second part of the analysis of substantial prejudice, I would argue there is none. Evidence of the defendant possessing those nine fentanyl pills ultimately cuts both ways. As noted in the opening brief, the argument was that the defendant was just an end-user, he was not a distributor. The nine pills supports that theory, but ultimately it also supports the government's argument that he knew what fentanyl was, that he intentionally sold fentanyl. Well there's no question that he knew what fentanyl was, he said in opening statement that he was addicted to fentanyl. Yes your honor, but I would note that opening statement is not evidence. Well I mean he never disputed that he was a daily user of fentanyl and that he was an addict, so it wasn't anything related. So I just don't see why nine fentanyl pills would do anything but prove what was undisputed, that he was a daily user of fentanyl. Yes your honor. If that's all it proves, I don't see the prejudice then. No your honor, no there was certain, the evidence was admitted under those proper purposes to prove knowledge, intent, and plan. Unless this court has any further questions, I would cede my time. Thank you. Mr. Fishman, would you like to speak? You would? Well I guess I have to let you. I was hoping to relinquish some of my time instead of going over, which is what I usually do, but it's not to be your honor. I'm sorry. Just a point of clarification on the timing. The timing of this year-long sales relationship doesn't relate to the charged conspiracy, right? The triggering, the triggering point is October 7th when she is interviewed by the police and she says, for the last year I have been buying, and he's incarcerated September 8th, 2021 through January 9th, 2022. So that would be the first three months of the year she's talking about. Correct. The argument that the four messages in Exhibit 24B establish that the confidential informant knows Mr. Hardy does not render her hearsay allegations reliable. The fact that she knows him does not establish the fact that she purchased 1,700 fentanyl pills from him over the course of the year. To the contrary, the fact that those messages show her buying, attempting to buy, exactly 100 pills, and those are the only messages the government has, would seem to fundamentally undercut her hearsay allegation. In terms of the court's finding of reliability, the court did say, I find, I find that the attribution reliable in the PSR. There is no there there. He does not explain anything about the confidential informant's statements that he deems renders them reliable. He does not. 404B, I will just say on the prejudice argument, lawyers, judges may look at this a little bit differently, I think, than jurors. The only physical evidence in this case, the only fentanyl that ever showed its face at trial was the nine pills that he possessed after the conspiracy had ended, and I think you cannot minimize the significance of that in the eyes of a jury. Thank you. Thank you. Cases submitted. Counselor excused.